UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAMON DARTANYON MITCHELL, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CAROLYN W. COLVIN,[1] ) <br> ) <br> Defendant. ) | Civil Case No. 12-1573 (RJL) <br><br> **FILED** <br> FEB 0 8 2016 <br> Clerk, U.S. District & Bankruptcy <br> Courts for the District of Columbia |

**MEMORANDUM OPINION**
(February 5, 2016) [Dkts. ## 11, 12]

Plaintiff, Damon Dartanyon Mitchell ("plaintiff" or "Mitchell"), seeks reversal of the denial of his application for Supplemental Security Income benefits by the Commissioner of the Social Security Administration. *See* Compl. [Dkt. # 1]. Pending before the Court are plaintiff's Motion for Judgment of Reversal ("Pl.'s Mot.") [Dkt. # 11] and defendant's Motion for Judgment of Affirmance ("Def.'s Mot.") [Dkt. # 12]. For the reasons set forth below, the Court GRANTS in part and DENIES in part plaintiff's motion and DENIES defendant's motion.

## BACKGROUND

On December 22, 2008, then-46-year-old plaintiff Damon Mitchell filed an application with the Social Security Administration ("SSA") seeking Supplemental Security Income ("SSI"). Administrative Record ("AR") at 218-24 [Dkt. # 8]. Mitchell

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for former Commissioner Michael J. Astrue as the defendant in this action.

1

alleged disability beginning May 1, 1991 as a result of blindness in his right eye and deafness in his right ear, AR at 237, and, as of February 2009, increased tearing in his left eye, AR at 262. The Commissioner of the SSA ("Commissioner") initially denied his application on May 5, 2009. AR at 115. Mitchell then requested a hearing by an administrative law judge ("ALJ"). AR at 124. ALJ Thomas Mercer Ray held a hearing on May 23, 2011, with Mitchell and his attorney present. AR at 45-79. On June 27, 2011, ALJ Ray issued a decision concluding Mitchell was not disabled and therefore ineligible for SSI benefits. AR at 30-40. The ALJ found:

> [Mitchell] has the residual functioning capacity to perform a full range of work at all exertional levels, but with the following nonexertional limitations. The claimant was unable to performed [sic] duties requiring binocular vision, depth perception, and a full field of vision. . . . The claimant should avoid climbing ropes, ladders, and scaffolds. The claimant must avoid exposure to hazards such as machinery and heights.

AR at 33. Mitchell appealed the ALJ's decision to the Social Security Appeals Council ("Appeals Council"). AR at 21. On July 12, 2012, the Appeals Council denied Mitchell's request for review and upheld the ALJ's decision. AR at 1-5.

Mitchell filed this action on September 21, 2012. *See* Compl. [Dkt. # 1]. Mitchell moved this Court to either reverse the Commissioner's decision, or remand the matter for a new hearing. Pl.'s Mot. [Dkt. # 11]. The Commissioner moved to affirm the Commissioner's decision. *See* Def.'s Mot. [Dkt. # 12].

## STANDARD OF REVIEW

In reviewing the decision of an ALJ, a district court must determine whether the ALJ's finding are supported by "substantial evidence." 42 U.S.C. § 405(g) (2006); *Brown v. Bowen*, 794 F.2d 703, 705 (D.C. Cir. 1986); *Jackson v. Barnhart*, 271 F. Supp. 2d 30, 33 (D.D.C. 2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Smith v. Bowen*, 826 F.2d 1120, 1121 (D.C. Cir. 1987). Substantial evidence is more than a scintilla, but less than a preponderance of the evidence. *Affum v. United States*, 566 F.3d 1150, 1163 (D.C. Cir. 2009). Once it is determined that the finding is supported by such evidence, the court *must* treat the ALJ's finding as conclusive. 42 U.S.C. § 405(g).

The court must also determine whether the ALJ correctly applied the relevant legal standards. *See Butler v. Barnhart*, 353 F.3d 992, 999 (D.C. Cir. 2004) (citations omitted); *Jackson*, 271 F. Supp. 2d at 33 ("Even if supported by substantial evidence . . . the court will not uphold the Commissioner's findings if the Commissioner reached them by applying an erroneous legal standard."). In so doing, the court must "carefully scrutinize the entire record," *Jackson*, 271 F. Supp. 2d at 34 (quoting *Davis v. Heckler*, 566 F. Supp. 1193, 1195 (D.D.C. 1983)), to determine whether the ALJ "has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits." *Simms v. Sullivan*, 877 F.2d 1047, 1050 (D.C. Cir. 1989). The court, however, may not "substitute its own judgment for that of the Commissioner." *Chevalier v. Shalala*, 874 F. Supp. 2, 3 (D.D.C. 1993 (citing *Davis*, 566 F. Supp. at 1195).

## ANALYSIS

The Social Security Act provides SSI benefits for claimants who demonstrate they are disabled. Relevant laws define "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2006); *see also* 20 C.F.R. § 404.1505.

The Commissioner conducts a five-step sequential evaluation to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The burden of proof rests on the claimant in steps one through four, but shifts to the Commissioner at step five. *Butler v. Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004). Failure at any step of the evaluation ends the inquiry. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step one, the claimant must show that he is not presently engaged in "substantial gainful activity." *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the Commissioner must determine whether the claimant has at least one "severe impairment" or combination of impairments that "specifically limits [his] . . . ability to do basic work activities" for no less than 12 months. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). At step three, the Commissioner must determine whether the claimant's impairment or combination of impairments "meets or equals" an impairment listed in the relevant regulations, Appendix 1 to subpart P of 20 C.F.R. § 404 ("Listed Impairments"). *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If equivalence is found, the claimant "is deemed disabled and the inquiry is at an end." *Butler*, 353 F.3d at 997; 20 C.F.R. §§ 404.1520(d),

416.920(d). If not, before moving to the fourth step, the Commissioner assesses a claimant's "residual functional capacity" ("RFC")—that is, the Commissioner must determine the most work the claimant can still do despite his limitations. *Id.* §§ 404.1520(a)(4), 416.920(a)(4), 404.1545(a). At step four, the claimant must demonstrate that he is incapable of performing his previous work based on his RFC. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At step five, the burden shifts to the Commissioner to demonstrate that the claimant can "make an adjustment to other work" in the national economy, considering his age, education, past work experience, and RFC. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the Commissioner concludes that the claimant can engage in "other work," then he is not disabled under the regulations. *Id.* §§ 404.1520(g), 416.920(g). Otherwise, the claimant is disabled and entitled to benefits. *Id.*

If a claimant's application for SSI benefits is initially denied, he may seek review by an administrative law judge ("ALJ"). *See id.* § 404.929. When an ALJ adjudicates disability claims, the ALJ must compile a comprehensive record incorporating all facts pertinent to the Commissioner's determination. *See Simms v. Sullivan*, 877 F.2d 1047, 1050 (D.C. Cir. 1989). The ALJ's opinion must show that he "has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits," *id.*, including evidence that was rejected, *Brown v. Bowen*, 794 F.2d 703, 708 (D.C. Cir. 1986). A claimant may appeal the ALJ's decision to the Appeals Council. 20 C.F.R. § 416.1470(a). As part of its review, the Council must consider any additional evidence submitted by the claimant that is new, material, and reasonably related to the period prior to the ALJ's decision. *See id.* § 416.1470(b).

Mitchell asks this Court to reverse the ALJ's decision and order the Commissioner to award him SSI benefits, or alternatively, remand the case to the ALJ for reconsideration, citing several alleged deficiencies in the Commissioner's decision. Specifically, Mitchell alleges the ALJ erred (1) at step three by failing to consider the judgment of a medical advisor designated to provide an opinion on equivalence of his combined impairments, (2) at step three by failing to consider whether a combination of Mitchell's impairments "meet or equal" an applicable Listed Impairment, (3) after step three by failing to address evidence contradicting conclusions with respect to Mitchell's residual functional capacity ("RFC") to work, and (4) at step four in concluding, without substantial evidence, that Mitchell was capable of performing past relevant work. For the following reasons, I find plaintiff's arguments in favor of reversal unconvincing, but I find that the ALJ did commit several errors of law at step three warranting remand.

### A. The ALJ Failed to Appropriately Consider Equivalent Impairments.

Mitchell first argues that the ALJ applied incorrect legal standards by failing to consider a sufficient medical evaluation from a physician on the issue of equivalence of his combined impairments. Pl.'s Mem. of Law in Support of Pl.'s Mot. ("Pl.'s Mem.") 5. At step three of the five-step disability inquiry, the ALJ must determine whether the claimant's impairment, or combination of impairments, "meets or equals" an impairment listed in the regulations. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The relevant regulations provide that an impairment, or combination of impairments, is medically equivalent to a listed impairment "if it is at least equal in severity and duration to the criteria of any listed impairment. *Id.* § 416.926(a). While the ALJ (or Appeals

6

Council) makes the ultimate decision on medical equivalence, *id.* § 416.926(e), Social Security Ruling (SSR) 96-6p "requires that the judgment of a physician . . . designated by the Commissioner on the issue of equivalence . . . must be received into the record as expert opinion evidence and given appropriate weight," SSR 96-6p, 61 Fed. Reg. 34466, 34468 (July 2, 1996).

  Plaintiff alleges that the ALJ erred by relying solely on the report of opthamologist Dr. Stoleru—who evaluated Mitchell's visual impairments, not his hearing impairment—in concluding that Mitchell does not have an impairment or combination of impairments that "meets or equals" a listed impairment. Pl.'s Mem. 5-6. In response, defendant does not dispute the insufficiency of Dr. Stoleru's opthamology report in the equivalence analysis, but instead points to the ALJ's consideration of physician Dr. Nelson-Desiderio's report, which evaluated Mitchell's visual and hearing impairments. Def.'s Mem. in Support of Def.'s Mot. ("Def.'s Mem.") 7-9. This suggestion is misleading. At step three, the ALJ cited Dr. Stoleru's findings alone to support his sole conclusion that Mitchell's visual impairment did not meet Listing 2.02 (loss of visual acuity), which requires the claimant's vision to be 20/200 or less in the better eye after best correction. AR at 33. Although the ALJ referenced Dr. Nelson-Desiderio's report and Mitchell's hearing loss in subsequent sections regarding residual functional capacity ("RFC"), the ALJ made no mention of either in the equivalence analysis. AR at 33-40. Needless to say, determination of a plaintiff's RFC is a separate inquiry from the step three equivalence determination. *Warfield v. Colvin*, No. CV 13-1357, 2015 WL 5611400, at *6 (D.D.C. Sept. 22, 2015) (Leon, J.); *see Carbajal v. Astrue*, No. 10-cv-02025-PAB,

2011 WL 2600984, at *3 (D. Colo. June 29, 2011) ("The lack of a required medical opinion on this issue is not rendered harmless by the ALJ's findings at step four and five.").

Mitchell makes a separate, but related, argument that the ALJ failed to consider whether a *combination* of Mitchell's impairments equaled any listing other than that related to loss of visual acuity, such as Listing 2.07—Disturbance of labyrinthine-vestibular disorder, a condition affecting one's movement and sense of balance. Pl.'s Mem. 6-7. Mitchell argues the ALJ's determination appears to disregard that Mitchell was found to suffer from two impairments: blindness in his right eye, and deafness in his right ear. Pl.'s Mem. 7. Indeed, there is no mention of Mitchell's hearing impairment in the ALJ's limited step three analysis. AR at 33. Nothing in the ALJ's decision indicates whether he considered evidence of Mitchell's hearing impairment, or the combination of his impairments, in the equivalence analysis. Because the ALJ retains the ultimate responsibility of determining equivalence, it is incumbent upon the ALJ to adequately explain his reasoning, including which evidence is credited and which is rejected. *See Brown v. Bowen*, 794 F.2d 703, 708-09 (D.C. Cir. 1986). As to consideration of the equivalence of Mitchell's combined impairments, the ALJ failed here.

Accordingly, the Court will vacate and remand for the ALJ to correct the errors relating to his step three determination. *See Warfield*, 2015 WL 5611400, at *7 (remanding where ALJ did not adequately consider whether claimant's combined physical and mental impairments were equivalent to a listed impairment); *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 (3d Cir. 2000) (remanding for ALJ to

"explain his findings at step three, including an analysis of whether and why [claimant's] impairments, or those impairments combined, are or are not equivalent in severity to one of the listed impairments"). Specifically, the ALJ should expressly consider the medical opinion of a physician regarding equivalence of plaintiff's visual and hearing impairments,[2] and give the appropriate weight thereto in determining whether the combination of Mitchell's impairments is equivalent to a Listed Impairment.

### B. The ALJ's RFC Analysis Appropriately Addressed Contradictory Evidence and Is Supported by Substantial Evidence.

If an ALJ finds no equivalent listings at step three, he then assesses the claimant's residual functional capacity ("RFC")—*i.e.* the most work the claimant can do despite his limitations. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), 404.1545(a). At step four, the claimant must demonstrate that he is incapable of performing his previous work based on his RFC. *Id.* § 404.1520(e). Mitchell argues that the ALJ applied incorrect legal standards by failing to address contradictory evidence about Mitchell's increased tearing in the RFC analysis. Pl.'s Mem 8-11. Mitchell also contends that the evidence was insufficient to support the ALJ's conclusion that Mitchell can perform past relevant work. Pl.'s Mem 12. For the following reasons, I disagree.

Applicable regulations prescribe a two-step process in the RFC analysis to evaluate a claimant's subjective complaints and determine whether he suffers from

---

[2] SSR 96-6p provides that consideration of a Disability Determination and Transmittal form containing a State agency physician's signature typically satisfies this requirement. SSR 96-6p, 61 Fed. Reg. 34466 (July 2, 1996). Under SSR 96-6p, however, an ALJ must obtain an updated report from a medical expert in certain situations. *Id.* The Court makes no findings as to whether this form was properly completed or is sufficient here.

symptoms, including pain, that affect his ability to perform work activities. *See Butler v. Barnhart*, 353 F.3d 992, 1004 (D.C. Cir. 2004). First, objective evidence must show medical impairments that can "reasonably be expected to produce," 20 C.F.R. §§ 404.1529(b), 416.929(b), "the actual pain, in the amount and degree, alleged by the claimant." *Butler*, 353 F.3d at 1004 (internal quotation marks omitted). If the claimant meets this first step, the ALJ then evaluates the persistence and intensity of the claimant's pain, as well as the extent to which it impairs his ability to work. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1); *Butler*, 353 F.3d at 1004. This second step requires the ALJ to evaluate the credibility of the claimant's subjective claims of pain and its functional effects. *See Butler*, 353 F.3d at 1005. "The ALJ's decision 'must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight.'" *Butler*, 353 F.3d at 1005 (quoting SSR 96-7p, 61 F.R. 34483 (July 2, 1996)). "The ALJ must [also] explain how he considered and resolved any 'material inconsistencies or ambiguities' evident in the record, as well as the reasons for rejecting medical opinions[.]" *Butler*, 353 F.3d at 1000 (internal citation omitted).

The ALJ correctly applied the relevant legal standards in evaluating Mitchell's subjective complaints and determining whether he suffers from symptoms that affect his ability to perform work activities. First, the ALJ found that Mitchell's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]" AR at 34. Next, the ALJ determined that "[Mitchell's] statements

concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment and do not result in the claimant being disable[ed.]" AR at 36.

Mitchell argues that the ALJ failed to address contradictory evidence about his increased tearing in this analysis, but the record proves otherwise. First, it bears note that Mitchell's repeated assertion in his briefing that the increased tearing is the result of a ruptured tear duct is specious. Mitchell points to Dr. Stoleru's report and Mitchell's testimony (that his left eye can become tired and things get blurry "because of my left tear duct," AR at 62) as evidence of a ruptured tear duct, but Mitchell made no reference to a ruptured tear duct, and Dr. Stoleru's only diagnosis regarding Mitchell's left eye is epiphoria, or excessive tearing—not a ruptured tear duct—for which Dr. Stoleru recommended lacrimal duct probing, which flushes out the tear duct. AR at 367. Moreover, Dr. Stoleru found that Mitchell has certain work limitations based on blindness in his right eye, but did not list any limitations based on the increased tearing in the left eye that he observed and diagnosed. AR at 367.

Pursuant the regulations, the ALJ provided specific reasons for his finding that Mitchell's statements regarding the intensity, persistence, and limiting effects of his symptoms were not credible to the extent they were inconsistent with the RFC assessment. During the hearing, Mitchell testified that although he reads and uses a computer during the day, he has to take breaks "all the time" because his "eye will get very tired, and it'll get blurry." AR at 61-62. The ALJ's opinion shows these statements are inconsistent with (1) Mitchell's own statements regarding the level and degree of his

11

daily activities since the date of alleged onset—including washing his clothes, dressing himself, cooking, bathing himself, and going grocery shopping, AR at 36; and (2) the opinion of Dr. Stoleru who stated that Mitchell's left eye had "excellent vision with mild constriction and *mild tearing*," was "normal in all other tests," and did not prevent Mitchell from performing normal work-related activities other than those requiring bilateral vision, depth perception, and full field vision, AR at 34-35 (emphasis added).[3]

Mitchell's final argument—that the ALJ lacked substantial evidence to conclude that he was capable of performing past relevant work due to the short-term nature of his work experiences—is similarly unpersuasive. *See* Pl.'s Mem. 12. Past relevant work, in pertinent part, must have "lasted long enough for [a claimant] to learn to do it[.]" § 416.965(a). In this case, Mitchell worked at Goodwill eight hours per day, five days per week, for three years, from 1996 to 1999. AR at 244. While working at Goodwill he "supervised workers who processed toys [and] inventoried all incoming and outgoing toys to be distributed." AR at 245. There is certainly more than the requisite scintilla of evidence to support the conclusion that three years is long enough to learn how to do this kind of work. *See Affum*, 566 F.3d at 1163; *Drejka v. Comm'r of Soc. Sec.*, 61 F. App'x 778, 783 (3d Cir. 2003) (affirming ALJ's finding that an individual could return to her

---

[3] Mitchell also argues that the vocational expert's testimony undermines the ALJ's RFC conclusion. Pl.'s Mem 11. The vocational expert testified that there would be no work for a hypothetical individual who is deaf in one ear, blind in one eye, and has a ruptured tear duct that causes constant blurriness in the other eye at random times throughout the day, requiring prolonged breaks three to six times per day. AR at 73-74. However, the evidence does not show that Mitchell in fact had a ruptured tear duct, suffered from constant blurriness in his left eye, and required such frequent and prolonged breaks.

past relevant work because the claimant had performed that work, though temporary, long enough (three months) to know how to do it). Thus, there is substantial evidence to support the ALJ's conclusion that Mitchell could perform past relevant work.

## CONCLUSION

Accordingly, the Court GRANTS IN PART and DENIES in PART plaintiff's Motion for Judgment of Reversal [Dkt. # 11] and DENIES defendant's Motion for Judgment of Affirmance [Dkt. # 12]. An Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge